UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ABOUBAKAR SIRIKI KONE,

        Petitioner,

v.                                           Case No. 05-CV-74180-DT

PHILIP WRONA, Interim Director,
Bureau of Immigration and
Customs Enforcement,

        Respondent.
_____/

**ORDER DENYING "PETITION FOR WRIT OF HABEAS CORPUS"**

Pending before the court is Petitioner Aboubakar Siriki Kone's *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241 filed on November 1, 2005. Having reviewed the petition and the subsequent briefing, the court concludes that a hearing is unnecessary. E.D. Mich. LR 7.1(e)(1). For the reasons stated below, the petition will be denied.

**I. BACKGROUND**

Petitioner Kone is a native citizen of the western African country Cote d'Ivoire (Ivory Coast). (Resp. at 2) He entered the United States on July 26, 1994 with a B-2 visa (non-immigration visitor for pleasure). (*Id.*) Petitioner subsequently applied for asylum, and his application was referred to an Immigration Judge ("IJ") on August 3, 1995. (*Id.*) The IJ denied Petitioner's asylum application on November 4, 1997, following a hearing on his claims. (*Id.*) The IJ then granted Petitioner voluntary departure by January 5, 1998. (*Id.*) If Petitioner failed to depart within that period, the IJ alternatively ordered Petitioner's removal

to Ivory Coast. (*Id*.) Petitioner appealed the IJ's ruling to the Board of Immigration Appeals ("BIA"), and the BIA affirmed the IJ's ruling without opinion on June 6, 2002. (*Id.*) The BIA allowed Petitioner thirty days for voluntary departure. (*Id.*) While Petitioner's BIA appeal was pending, Petitioner married a United States citizen on October 26, 2001. (*Id.* at 3.) Petitioner's wife then filed an I-130 petition (immediate relative) on July 10, 2002 on Petitioner's behalf for the purpose of adjusting his status to that of a lawful permanent resident of the United States. (*Id.*) The United States Citizenship and Immigration Services ("CIS") granted an interview for Petitioner's I-130 visa petition. On March 24, 2005, Petitioner appeared for the interview; when Petitioner finished the interview, the United States Immigration and Customs Enforcement ("ICE") detained Petitioner based on the IJ's November 4, 1997 final order of Petitioner's deportation. (*Id.*) Petitioner's I-130 visa petition was eventually denied by the CIS on July 28, 2005 because the CIS concluded that Petitioner's marriage was a sham to obtain immigration benefits and for the primary purpose of evading immigration laws. (*Id.* at Ex. N.)

During Petitioner's detention, the ICE served him with an I-229 warning notice for failure to deport along with an instruction sheet regarding requirements to assist in removal. (*Id.* at Ex. G.) One removal requirement is that Petitioner needs to obtain the travel document from the Ivory Coast government. (*Id.*) Petitioner's wife tried to obtain the travel document for Petitioner by submitting Petitioner's passport and relevant materials to the Ivory Coast embassy in the United States. (*See Id.* at Ex. H and I.) The Ivory Coast embassy, however, denied Petitioner's request for the travel document on April 20, 2005 and confiscated his passport because the embassy believed that Petitioner's passport was

fraudulent. (*Id.* at Ex. H.) The embassy again denied Petitioner's request for the same reason on August 31, 2005 (*Id.* at Ex. I.)

The ICE's internal review on Petitioner's file on August 31, 2005 resulted in a continuation of Petitioner's detention because Petitioner had failed to obtain the necessary documents for his deportation or to provide the ICE with evidence of his good faith attempt to obtain such documents. (Pet. at Ex. K.) ICE officials also instructed Petitioner to obtain a copy of his birth certificate through someone in the Ivory Coast in order to secure Petitioner's travel document. (Resp. at Ex. M.) Indeed, a July 20, 2005 letter from the Ivory Coast embassy to Petitioner stated that Petitioner may obtain his birth certificate in Ivory Coast through his family members in his birth city. (*Id.* at Ex. K.) ICE officials indicated to Petitioner that he would be released on bond, ultimately decided to be $1,500.00, contingent upon obtaining a copy of his birth certificate. (*Id.* at 3 & Ex. J.) Petitioner responded in letters to ICE officials on September 2, 2005 and September 11, 2005 that he was having trouble obtaining a copy of his birth certificate from the Ivory Coast embassy for the travel documents. (Pet. at Ex. M and N.) The ICE continues to deny Petitioner's requests to be released from detention until Petitioner can obtain the necessary travel documents for his deportation. (*Id.* at Ex. M.) ICE Headquarters in Washington D.C., has recently become involved in Petitioner's case to help him in obtaining his travel documents. (*Id.* at 5 and Ex. M.)

## II.  STANDARD

Under 28 U.S.C. § 2241, the court has jurisdiction to hear cases in which an alien is claiming that he is being held in custody in violation of the United States Constitution or laws

of the United States. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The post-removal-period detention statute that applies to aliens who have violated their non-immigrant status conditions provides that they may be detained beyond the removal period if they have "been determined by the Attorney General to be . . . unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *Zadvydas*, 533 U.S. at 688-689. The Supreme Court has read into 8 U.S.C. § 1231(a)(6) an "implicit limitation" which "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Thus, § 1231(a)(6) does not permit indefinite detention, which violates a due process right to liberty under the Fifth Amendment. *Id.* at 690; *Ly v. Hansen,* 351 F.3d 263, 267 (6th Cir. 2003).

In determining whether to grant a writ of habeas corpus for a violation of § 1231(a)(6), the *Zadvydas* Court stated that,

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

*Zadvydas*, 533 U.S. at 699-700. "[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.'" *Id.* at 690 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738 (1972)). Once removal of a deportable alien is no longer reasonably foreseeable, continued detention is no longer authorized by 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 699.

## III.  DISCUSSION

### A.  The Indefinite Detention Claim

Petitioner argues that the ICE is detaining him indefinitely, and this indefinite detention exceeds the ICE's statutory authority under 8 U.S.C. § 1231(a)(6).  (Pet. at 5.) Petitioner based his argument on the United States Supreme Court case, *Zadvydas v. Davis*, in which Petitioner states that *Zadvydas* opinion limited post-removal detention to six months.  (*Id.*)  Petitioner believes that Respondent has brought forward nothing to indicate a substantial likelihood of removal beyond his six month detention, and therefore, he argues that he should be released.

First, the court notes that the *Zadvydas* Court did not limit post-removal detention to only six months.  Rather, the Court held that a six month detention was *presumptively* reasonable, stating: "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas,* 533 U.S. at 701.  In making this inquiry, it is first Petitioner's burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  Once Petitioner has met this burden, "the Government must respond with evidence sufficient to rebut that showing."  *Id.*

Here, the court must deny Petitioner's petition because the court finds that Petitioner has not provided sufficient evidence to give this court a "good reason to believe" that his removal is unlikely in the reasonably foreseeable future.

5

The court, in particular, notes that Petitioner has not offered any evidence to show that he has made a legitimate effort to obtain a copy of his birth certificate, which is essential in securing his travel documents for his removal. (Resp. at 6.) Petitioner relies on the political unrest in the Ivory Coast which has possibly, if not likely, uprooted his family. He states that, "[he] has no knowledge of his family situation presently living in Ivory Coast therefore making it impossible for him to contact anybody for the purpose of obtaining a birth certificate at this moment." (Reply at 4.) Petitioner's explanation, however, does not satisfy this court. Whether or not Petitioner has present knowledge of his family's situation in Ivory Coast does not prevent Petitioner to inquire into his family's whereabouts or does it prevent him from, at least, attempting to establish contact with them. This court believes that Petitioner has more than one way to make a legitimate effort to obtain a copy of his birth certificate. Petitioner can try to establish contact with them either through family[1] or friends, or even send letters to their last known addresses in Ivory Coast. The current political climate may, indeed, make such efforts difficult and, possibly, fruitless.[2] Nonetheless, until Petitioner at least attempts to contact family members, this court cannot conclude that his removal is unlikely in the reasonably foreseeable future. As stated by Respondent, Petitioner's omission to act (by failing to obtain the necessary documents to apply in good faith for a travel document) appears to be preventing his own removal. (Resp. at 5.)

---

[1] The court notes that Petitioner apparently has a brother living in the United States. (*See* Resp. at Ex. L.) Petitioner has not asserted whether his brother has any way of contacting their parents or if, perhaps, his brother has any familial contacts who could assist Petitioner in obtaining a birth certificate.

[2] The Ivory Coast embassy has indicated that obtaining copies of Petitioner's birth certificate may be difficult inasmuch as the city where he was born "is under rebel control following a military uprising in October 2002." (Resp. at Ex. K.)

This court, therefore, believes that Petitioner's removal is likely in the reasonably foreseeable future once Petitioner makes a reasonable effort to try to contact his Ivory Coast family regarding his birth certificate. If Petitioner is successful, it is likely that his removal will be completed, as Respondent has offered evidence that "the Ivory Coast is a country that normally allows the repatriation of its citizens who are found deportable/removable from the United States." (Resp. at Ex. M.) The court, thus, concludes that Petitioner's continued detention pursuant to 8 U.S.C. §1231(a) is proper.

The court's determination is final unless Petitioner can show convincing evidence that he has made an honest effort to try to contact his family for his birth certificate, and the effort was truly unsuccessful.[3] On the other hand, if Petitioner succeeds in obtaining his birth certificate, ICE has agreed to release him from detention under a bond of $1,500. (Resp. at 4, n. 2 & 7.)

### B. The Violation of Substantive and Procedural Due Process Rights Claim

Petitioner further asserts that his indefinite detention by ICE violates his substantive and procedural due process rights under the due process clause of the Fifth Amendment. (Pet. at 5.) All aliens are afforded due process protection once within the borders of the United States, "though the nature of that protection may vary depending upon status and circumstance." *Zadvydas,* 533 U.S. at 693-94 (citing *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982)). Because the court determines that Petitioner's removal is likely in the reasonably foreseeable future, Petitioner cannot justifiably argue that

---

[3]The court notes, however, that the longer Petitioner remains in custody, "what counts as the 'reasonably foreseeable future' conversely will shrink." *Zadvydas,* 533 U.S. at 701.

his detention by ICE is indefinite. Additional process for the claim of indefinite detention to protect one's liberty interest is, therefore, not entitled to Petitioner and not required in the present situation[4]. *Ly*, 351 F.3d at 273 (citing *Zadvydas*, 533 U.S. at 692).

### IV.  CONCLUSION

IT IS ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED WITHOUT PREJUDICE.  If Petitioner remains detained, Petitioner may renew his petition at any time accompanied by evidence that he has made actual, substantial, good faith efforts to secure a copy of his birth certificate, by contacting his Ivory Coast family or otherwise, and that the efforts were unsuccessful.

        S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  January 31, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 31, 2006, by electronic and/or ordinary mail.

        S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522

---

[4] If, for example, Respondent is asserting a "strong special justification," consisting of more than convenience in removal or general community protection, to support indefinite detention of Petitioner, then additional process, such as a hearing, would be required. *Ly*, 351 F.3d at 273; *Zadvydas*, 533 U.S. at 690 and 692.

S:\Cleland\JUDGE'S DESK\Even Orders\05-74180.KONE.ImmigrationHabeas.wpd